In the Matter of the Estate of WILHELMINA SCHMIDT, Deceased.

Surrogate's Court, Monroe County, December 13, 1935.

*Charles B. Bechtold,* for the petitioner.

*J. J. McInerney,* as executor, in person, and by *J. C. O'Brien,* of counsel.

FEELY, S. The estate of Adolph Schmidt, a widower, seeks herein to compel the estate of his wife to set off to it the property exempted under section 200 of the Surrogate's Court Act; and the respondent challenges the right thereto.

In June, 1912, these two persons, then late in life, married, and cohabited for almost two years, in a house owned by him here in Rochester, N. Y. She also owned a house here, and had some money. In September, 1913, she left his home, in his absence, leaving a letter, stating she had taken half of everything, including $100.35 from the bank, as her right, and added her resentment of his suspicions, saying: " your revolver is in the summer kitchen in the bake oven for it lay too suspicious (where it was) so I put it there. And now may it go well with you. May be you feel better now and dont have to be afraid on account of your money. I will surely be able to make my living also." She did support herself thereafter, without help from him; and they never again met during their respective lives, a period of about twenty years.

In 1920 she met the witness H. F. Kallusch, and an engagement to marry ensued. At her suggestion, their marriage was solem-

nized in Toronto, Canada, on November 21, 1921, and the fact was duly registered there. She and Mr. Kallusch soon returned to Rochester, N. Y., and thereafter openly cohabited as husband and wife, in her house, until her death on December 3, 1934. Mr. Kallusch survived her, as did also Adolph Schmidt, but the latter outlived her by only thirteen days. No children were born of either union.

Two years after her marriage with Mr. Kallusch she accepted $500 from Adolph Schmidt as the consideration for her release of all her " right, title and interest of any kind or nature which I now have as his wife or hereafter may have as his widow in and to any of his real or personal property, or his estate." In this release she also assigned to his four named children as his heirs at law all her " right title and interest in and to the property and estate of the said Adolph Schmidt which I now have or may hereafter acquire by statute or operation of law."

Against that background the present demand for exemptions from her estate must be considered. Without regard to the comparative blame for this separation, it developed into a course of conduct by her — especially in the marriage with Mr. Kallusch and the release given to Mr. Schmidt thereafter — which barred her from inheriting from Mr. Schmidt's estate had he died intestate; or from having any testamentary election in respect thereto. She had abandoned him; and her release alone made it clear that she could not claim exemptions from his estate had she outlived him.

The time soon came when he abandoned her, for desertion and infidelity. He did everything he could to repudiate his marital status as to her, short of divorcing her. He never supported her after she left him; and by the release transaction he provided that even after his death she should have no rights whatever in his estate; and he steadily maintained that attitude of repudiation for the last twenty years of his life, and by his last will.

The release was drawn up by his attorney; and although Mr. Schmidt did not give her back a release of like kind, his whole course of conduct makes it clear he had a fixed intention throughout of never returning to her, but considered their marriage as no longer existent, and as repudiated forever. So far as the paper work went, the way was technically left open for him to claim rights in her estate; but on the facts as a whole the only inference is that he abandoned her soon after she had abandoned him. Possibly, one might say, it was a " mutual " abandonment, in the sense that there can be a mutual hatred between two persons. This characterization does not change the case, even though it has been loosely said that " to constitute an abandonment there must be a desertion

without consent." The usual context of such statements is that there was a separation agreement in force between the spouses; and this relegated them to their remedies under the contract, which, in most cases, by having made provision for future support, was a recognition of the marital status rather than a repudiation of it. When such support was released for a lump·sum, especially when the release took in the decedent's estate, a repudiation of the marriage thereafter can be inferred; and it has also been held that where a husband leaves a wife with the express determination not to live with her evermore, he abandons her even though he continues to support her.

There is nothing in this case, therefore, to impair the conclusion that Adolph Schmidt, the petitioner's testator, had forever abandoned his wife, the respondent's testatrix; and that he thereby lost all right to any testamentary election as regards her will, disposing of all her estate; and he also barred himself from inheriting from her as in intestate succession had she died intestate. Notwithstanding all that, his representatives, despite the fact they are strangers, now claim they can walk in his shoes into the home of the estranged wife, who would not have had any rights whatever as regards his estate, and there, where neither he nor they have any rights superior to those of her legatees, they can take out of her home money and other personal property to the possible extent of the $1,800 which the statute safeguards from creditors for the purpose of enabling the " family " which the testatrix had maintained, and her " dependents " and " beneficiaries," to carry on, with this nucleus of a household outfit, through the period of the readjustment made necessary by death. So far as he was concerned she had neither family nor spouse, " dependents " or " beneficiaries."

The reasons expressed in *Matter of Barnes* (149 Misc. 149) for concluding that abandonment by a spouse was a bar to obtaining the exemptions enlarged by the amendments made in the great revision of 1929, have since been approved in quarters that might possibly be taken to reflect the intention of some members of the Commission (*Matter of Sitkin*, 151 Misc. 448, 458, and see *Matter of Brown*, 153 id. 282, 287); and in *Matter of Fesenmeyer* (158 id. 557), *Matter of Barnes* was followed; but those reasons expressed in the *Barnes* case have not met with approval in other quarters where weight was felt in the argument based on the omission of the Legislature to add to those new exemptions the same express qualification which was then made to determine the right to testamentary election, and which emerged from pre-existing case law into a statutory condition to the right to inherit. (*Matter of Zolessi*, 154 Misc. 313; *Matter of Gluer*, 155 id. 41.) Thus an amend-

ment has become desirable that will clarify the evidence of the intention of the Legislature in this respect of the exemptions. Meantime little, perhaps, is contributed toward finality by repeating the view that, in the face of the evils the Commission aimed to eliminate, its recommendations to the Legislature, generally and in respect to the enlargement of the exemptions, seem to be so expressed as to indicate that it was using the words, " spouse," " widow " and " family," in their new connotations required by the great improvements that were then in the making in those respects, and were initiated by one and the same act of the Legislature and perfected by subsequent acts.

The petition is accordingly dismissed on the merits.

Enter a decree accordingly.